UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
                                    :

DIGITALB, SH.A,                     :
                                    :

                 Plaintiff,      :
                                    :       17cv4102

       -against-                 :
                                    :      <u>OPINION & ORDER</u>

SETPLEX, LLC, *et al.*,           :
                                    :

                 Defendants.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

WILLIAM H. PAULEY III, District Judge:

          DigitAlb, Sh.a ("DigitAlb") brings this action alleging copyright infringement,

trademark dilution, communications piracy, and breach of contract against Setplex LLC (d/b/a

NimiTV and d/b/a TVAlb), LBD Group, LLC, Lionel Dreshaj, and Benjamin Dreshaj (together,

"Setplex").  Setplex moves to dismiss the claims for direct and contributory copyright

infringement in the United States as well as the trademark dilution claim under Rule 12(b)(6).  It

also seeks to dismiss the claim for copyright infringement in various European countries for

<u>forum non conveniens</u> under Rule 12(b)(3), and alternatively asks this Court to decline to

exercise supplemental jurisdiction over that claim.  For the reasons that follow, Setplex's motion

is granted in part and denied in part.

BACKGROUND

          The allegations in the First Amended Complaint ("Compl.") are presumed true for

the purposes of this motion.  This action arises from the piracy of Albanian-language television

programming.  DigitAlb is an Albanian corporation engaged in the distribution of Internet

Protocol Television ("IPTV") programming from certain Albanian-language television channels.

(Compl. ¶¶ 6, 14-15; Compl., Ex. A.)  IPTV involves the delivery of streaming content and

programming by "sending coded digital transmissions over the Internet," which are then translated by standard television receivers or other devices provided by the distributor to the subscriber. (See Compl. ¶¶ 6, 12.) DigitAlb distributed and published this programming pursuant to licenses from the Albanian and Kosovan originators of the programming who granted it exclusive distribution rights in the United States, the European Union, the United Kingdom, and other independent European countries. (Compl. ¶¶ 6, 13-15.) In addition, DigitAlb licensed other parties to distribute and publish this programming. (Compl. ¶¶ 6, 13.)

The gravamen of the Complaint is that Setplex—a U.S.-based distributor of Albanian-language content and programming—infringed DigitAlb's exclusive distribution rights by pirating, retransmitting, and publishing the licensed programming to its own customers in the United States and in Europe without DigitAlb's authorization. (Compl. ¶¶ 1, 7, 16-17.) Although the Complaint largely glosses over the method through which Setplex purportedly distributed this programming, this Court gathers that, at minimum, Setplex delivered the programming to its subscribers through its website or by providing its subscribers with devices or equipment to receive and display the programming. (Compl. ¶¶ 26, 34, 39.) Following a pre-motion conference identifying certain pleading deficiencies in DigitAlb's U.S. copyright claims, DigitAlb amended its complaint to add "[e]xamples of the individual daily programs published on each channel and to which Plaintiff holds exclusive rights." (Compl. ¶ 14; see Compl., Ex. A.) Four claims are the subject of this motion: (1) Count I, for direct copyright infringement in the United States; (2) Count II, for contributory copyright infringement in the United States; (3) Count IV, for copyright infringement in the United Kingdom, the European Union, and other European countries; and (4) Count VI, for false designation of origin and trademark dilution.

<u>LEGAL STANDARD</u>

The legal standards governing a motion to dismiss for failure to state a claim are well-established. On a Rule 12(b)(6) motion, the factual allegations in a complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. <u>Gonzalez v. Hasty</u>, 802 F.3d 212, 219 (2d Cir. 2015). To survive a motion to dismiss, the complaint "must contain sufficient factual matter" to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 663, 678 (2009) (citation omitted). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 500 U.S. 544, 555 (2007). While a complaint "does not need detailed factual allegations" to survive a motion to dismiss, <u>Bell Atl. Corp.</u>, 500 U.S. at 555, a pleading that merely recites conclusory allegations or a "formulaic recitation of the elements of a cause of action" fails to state a claim, <u>Iqbal</u>, 556 U.S. at 678 (citation omitted).

In deciding a Rule 12(b)(6) motion, a court may consider only the facts stated on the face of the complaint, the documents attached to the complaint by reference, and matters of which judicial notice may be taken. <u>Leonard F. v. Isr. Disc. Bank of N.Y.</u>, 199 F.3d 99, 107 (2d Cir. 1999). Although Setplex includes several documentary exhibits in support of its motion to dismiss, those exhibits are not necessary to resolution of this motion.

<u>DISCUSSION</u>

I.      <u>U.S. Copyright Infringement Claims</u>

        A. <u>Direct Copyright Infringement</u>

Count I alleges that Setplex violated DigitAlb's exclusive distribution rights by distributing its licensed programming in the United States without authorization. (Compl. ¶¶ 19-21.) To state a claim for copyright infringement, a plaintiff must allege that it owns a valid

copyright and that the defendant violated one of the exclusive rights the plaintiff holds in the work, which includes distribution rights.  Capitol Records, LLC v. ReDigi Inc., 934 F. Supp. 2d 640, 648 (S.D.N.Y. 2013) (citing Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1372 (2d Cir. 1993)).  In other words, a plaintiff must generally plead (1) the specific original works are the subject of the copyright claim; (2) that plaintiff owns the copyrights in those works; (3) that the copyrights were registered in accordance with 17 U.S.C. § 411; and (4) the acts by which and the time period during which the defendant infringed the copyright.  Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1992).

Setplex tethers its arguments for dismissal to DigitAlb's failure to allege that the at-issue copyrights are registered in accordance with the Copyright Act.  Specifically, it contends that DigitAlb acknowledges that the copyrights are not registered pursuant to 17 U.S.C. § 411, and that DigitAlb has not alleged that the copyrights are exempt from registration as non-United States works.  DigitAlb does not dispute that the at-issue copyrights are not registered, but instead retorts—without citing any legal authority—that it is not required to explicitly plead that the works are exempt from registration.

Pursuant to the Copyright Act, holders of copyrights in "United States works" may not institute a copyright infringement suit "until preregistration or registration has been made."  17 U.S.C. § 411(a).  A work is a "United States work" only if, in the case of a published work, it is first published (1) in the United States; (2) simultaneously in the United States and another treaty party whose law grants copyright protection for at least the term provided in the United States; (3) simultaneously in the United States and a foreign nation that is not a treaty party; or (4) in a foreign nation that is not a treaty party, and all the authors of the work are headquartered in the United States.  17 U.S.C. § 101.  On the other hand, non–United States

works—generally, works first published outside the United States in a foreign country that is a signatory to the Berne Convention—are exempt from registration.  See 5 Patry on Copyright § 17:77 (2017); accord Jose Armando Bermudez & Co. v. Bermudez Int'l, 2000 WL 1225792, at *10 (S.D.N.Y. Aug. 29, 2000).

As a threshold matter, this Court rejects DigitAlb's assertion that it is not required to allege exemption from § 411's registration precondition.  Although DigitAlb appears to concede that works first published abroad and in the United States simultaneously would be subject to registration, its argument implicitly suggests that because the Complaint does not allege simultaneous publication, those works must be exempt.  (See Memorandum of Law Opposing the Motion of Defendants to Dismiss Counts I, II, IV, and VI of the First Amended Complaint, ECF No. 51 ("Pl.'s Opp.") at 4.)  But this cannot be the rule.  If a court were to woodenly accept that a work is exempt from registration based on the omission of allegations indicating that the work is a United States work, any party seeking to surmount the registration requirement could simply omit any allegation of first publication in the United States or first publication simultaneously within and outside the United States.  Thus, should DigitAlb seek to rely on the § 411 registration exemption, it must allege that the works are not United States works within the meaning of § 101.  See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, 2017 WL 696126, at *13 (S.D.N.Y. Feb. 15, 2017); accord Kernel Records Oy v. Mosley, 694 F.3d 1294, 1304-05 (11th Cir. 2012) (summary judgment context).

While DigitAlb proclaims that it "is certain from the allegations in the First Amended Complaint" that it did not publish the at-issue programming simultaneously in the United States, a careful examination of the relevant allegations reveals DigitAlb's conclusion to be far from certain.  (See Pl.'s Opp. at 5.)  Here, the only allegations pertaining to publication of

the programming are that DigitAlb "published those works outside of the United States" and that it "licens[ed] other distributors within and without the United States, not including the defendants, to publish them."  (Compl. ¶ 13.)  But these allegations do not identify where or when the programming was <u>first</u> published.[1]

Two additional points warrant brief discussion.  First, DigitAlb avers that the programming was "created, developed, and produced . . . outside of the United States, i.e. in the Republic of Albania or the Republic of Kosovo."  (Compl. ¶ 13.)  Indeed, courts in this Circuit sometimes frame the registration requirement in terms of the work's "country of origin."  <u>E.g.</u>, <u>Sadhu Singh Hamdad Trust v. Ajit Newspaper Advert., Mktg. & Commc'ns, Inc.</u>, 503 F. Supp. 2d 577, 584 (E.D.N.Y. 2007) (citing <u>Jose Armando Bermudez & Co.</u>, 2000 WL 1225792, at *10).  Of course, this phrasing makes sense in light of § 411(a)'s historical exemption from registration of "copyright[s] in Berne Convention works whose <u>country of origin</u> is not the United States."  17 U.S.C. § 411(a) (1997) (emphasis added).  But like § 101's current definition of "United States work," the preceding version of § 101 defined the "country of origin" as the United States for § 411 purposes based on where the work was "first published."  <u>See</u> 17 U.S.C. § 101 (1997); <u>accord</u> 5 Patry on Copyright § 17:77 (couching the "country of origin of the work" in terms of where that work was first published).  Therefore, while the amended complaint suggests that the works may have "originated" in Albania or Kosovo from a layman's perspective, it says nothing about where the works were first published.

Second, DigitAlb alleges that the programming on at least some of the at-issue

---

[1]     At oral argument, counsel for DigitAlb represented that the programs were first published in Albania and Kosovo.  (Oral Arg. Hr'g Tr. 8:15-8:17.)  These statements by counsel do not validly amend DigitAlb's pleadings.  <u>Cf.</u> <u>Wright v. Ernst & Young LLP</u>, 152 F.3d 169, 178 (2d Cir. 1998) (parties may not amend pleadings through statements in briefs).

channels—Top Channel, Top News, Musical, and Top Channel HD—was "first aired . . . either (1) outside of the United States or (2) simultaneously outside the United States and within the United States."  (Compl. ¶ 50.)  This too is insufficient to allege where the works were first published because the mere public performance or display of a work does not constitute publication.  17 U.S.C. § 101; <u>accord</u> 1 Nimmer on Copyright § 4.11 (explaining that broadcast of audiovisual works does not constitute publication).  Accordingly, DigitAlb's direct copyright infringement claim is dismissed.

      B.  <u>Contributory Copyright Infringement</u>

      Count II alleges contributory infringement by LBD Group and the Dreshaj Defendants on the basis that they facilitated, managed, or directed Setplex's unauthorized distribution of the programming by entering into contracts with consumer subscribers for the programming and causing the delivery of the programming to the subscribers.  (Compl. ¶¶ 26-29.)  To state a claim for contributory copyright infringement, a plaintiff must allege that someone "with knowledge of the infringing activity[] induce[d], cause[d], or materially contribute[d] to the infringing conduct of another."  <u>Blank Prods., Inc. v. Warner/Chappell Music, Inc.</u>, 2013 WL 32806, at *3 (S.D.N.Y. Jan. 3, 2013) (quoting <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 117-18 (2d Cir. 2010)).  Setplex's only argument for dismissal of this claim is that DigitAlb's failure to sufficiently plead the registration element is fatal to its contributory copyright infringement claim.  It does not otherwise challenge the sufficiency of the allegations related to contributory infringement.  This Court's analysis of the direct copyright infringement claim compels the same result as to the contributory infringement claim because § 411 is a precondition to <u>suit</u>, not to bringing direct infringement claims only.  Accordingly, Count II is also dismissed.

C. Leave to Amend

Setplex contends that DigitAlb should not be afforded another opportunity to amend its copyright infringement claims because it received notice at the pre-motion conference of the need to allege additional details. Such details included whether the allegedly infringed works are foreign works, the country of origin, and the date of publication. (Hr'g Tr. at 8:25-10:22.) DigitAlb offers no argument in opposition. See In re Jumei Int'l Holding Ltd. Sec. Litig., 2017 WL 95176, at *5 n.4 (S.D.N.Y. Jan. 10, 2017) (arguments not rebutted in opposition briefs are deemed conceded). At oral argument on the motion, DigitAlb admitted that it could have pleaded that the at-issue works were exempt. Counsel offered no explanation for why he did not do so aside from his belief that it was not necessary. (Oral Arg. Hr'g Tr. at 4:10-4:22.) Courts have dismissed claims with prejudice on the basis that "the plaintiff has already had an opportunity to replead after specific warnings as to a complaint's deficiencies." Tamar v. Mind C.T.I., Ltd., 723 F. Supp. 2d 546, 559 (S.D.N.Y. 2010). A fundamental purpose of a pre-motion conference is to discuss potential defects in pleadings and to obviate successive pleadings. Accordingly, leave to amend Counts I and II is unwarranted.

II. Trademark Dilution Claim

Setplex seeks to dismiss Count VI for false designation of origin and trademark dilution under the Lanham Act. As an initial matter, DigitAlb appears to conflate a claim for false designation of origin under 15 U.S.C. § 1125(a) with a claim for trademark dilution under 15 U.S.C. § 1125(c). In essence, DigitAlb alleges that each at-issue television channel contains a unique symbol that appears in the corner of the television screen. (Compl. ¶ 59.) While the Complaint purports to state a cause of action under § 1125(c), DigitAlb alleges that Setplex's unauthorized distribution of the television programming and use of the symbols on their websites

constitute a false designation of origin within the meaning of § 1125(a)(1).  (Compl. ¶ 64.)

However, it also avers that Setplex's use of these symbols dilutes the quality of the symbols.

(Compl. ¶ 65.)  In its briefing, DigitAlb appears to have abandoned any § 1125(a) claim, and

fails to make any effort in its opposition to refute Setplex's argument that such a claim should be

dismissed based on DigitAlb's failure to allege the existence of a valid mark entitled to Lanham

Act protection.  See In re Jumei Int'l Holding Ltd. Sec. Litig., 2017 WL 95176, at *5 n.4.  Thus,

this Court construes Count VI as bringing a claim for trademark dilution.

        To state a claim for federal trademark dilution, the plaintiff must allege: (1) the

mark is famous; (2) defendant's use of the mark is made in commerce; (3) the defendant used the

mark after the mark is famous; and (4) the defendant's use of the mark is likely to dilute the

quality of the mark by blurring or tarnishment.  A.V.E.L.A., Inc. v. Estate of Marilyn Monroe,

LLC, 131 F. Supp. 3d 196, 211 (S.D.N.Y. 2015); see 15 U.S.C. § 1125(c)(1).  Fame is the "key

ingredient" in a trademark dilution claim.  Global Brand Holdings, LLC v. Church & Dwight

Co., 2017 WL 6515419, at *2 (citing Savin Corp. v. Savin Grp., 291 F.3d 439, 440 (2d Cir.

2004)).  For a mark to be considered famous, "it must be 'widely recognized by the general

consuming public of the United States' as a designation of the source of the goods or of the

mark's owner."  Schutte Bagclosures Inc. v. Kwik Lok Corp., 48 F. Supp. 3d 675, 702 (S.D.N.Y.

2014) (citing 15 U.S.C. § 1125(c)(2)(A)).  Courts have "generally limited famous marks to those

that receive multi-million dollar advertising budgets, generate hundreds of millions of dollars in

sales annually, and are almost universally recognized by the general public."  Schutte

Bagclosures Inc., 48 F. Supp. 3d at 702.  Put differently, dilution claims are restricted to marks

that are "truly famous" or so well-known that they are essentially household names, such as

Coca-Cola, Nike, or Budweiser.  Luv N' Care, Ltd. v. Regent Baby Prods. Corp., 841 F. Supp.

2d 753, 757-58 (S.D.N.Y. 2012).

DigitAlb counters that fame in niche markets—such as Albanian-language television—is sufficient for a trademark dilution claim if the plaintiff and defendant are using the mark in the same market, citing the Seventh Circuit's decision in <u>Syndicate Sales Inc. v. Hampshire Paper Corp.</u>, 192 F.3d 633 (7th Cir. 1999). But DigitAlb's reliance is misplaced. In 2006, the Trademark Dilution Revision Act ("TDRA") amended the federal anti-dilution statute, abrogating <u>Syndicate Sales</u>'s reasoning by adding language explicitly defining a "famous" mark to be one "widely recognized by the <u>general consuming public</u> of the United States . . . ."[2] 15 U.S.C. § 1125(c)(2)(A) (emphasis added); <u>see</u> <u>Luv N' Care</u>, 841 F. Supp. 2d at 757-58 (noting that the inclusion of this language "was intended to reject dilution claims based on niche fame"). Indeed, the Seventh Circuit's conclusion was premised on the fact that one of the factors for determining whether a mark is famous "indicates that fame may be constricted to a particular market"—a factor that was since omitted by the TDRA amendments. <u>See</u> <u>Syndicate Sales</u>, 192 F.3d at 641. Thus, it should be no surprise that no post-TDRA case cites to <u>Syndicate Sales</u> for the niche-fame proposition.

DigitAlb's failure to plausibly allege that the symbols are famous to the general consuming public of the United States is fatal to its trademark dilution claim. <u>Global Brand Holdings, LLC</u>, 2017 WL 6515419, at *3 (holding that allegations of niche fame or a substantial advertising budget are, standing alone, insufficient to plead wide recognition by the general consuming public). The only allegation that pertains to the fame of the symbols is a conclusory allegation that each of these symbols is "is associated by the public in the United States . . . with

---

[2] As Setplex points out, the Seventh Circuit itself recognized that the TDRA amendment "eliminated any possibility of 'niche fame,' which some courts had recognized before the amendment." <u>Top Tobacco, L.P. v. N. Atl. Operating Co.</u>, 509 F.3d 380, 384 (7th Cir. 2007) (citing <u>Syndicate Sales, Inc. v. Hampshire Paper Corp.</u>, 192 F.3d 633 (7th Cir. 1999)).

each of the individual channels and is widely recognized by the general public as a deviation of the source of the content distributed by the channels . . . ."  (Compl. ¶ 61.)  But this allegation amounts to nothing more than a recitation of § 1125(c)(2)(A)'s definition of a "famous" mark. Accord Global Brand Holdings, LLC, 2017 WL 6515419, at *4 (explaining that mere conclusory statements that a mark is "famous" and widely recognized by the general consuming public are insufficient).  Moreover, the Complaint is devoid of factual allegations that shed light on the extent of the symbols' advertising, publicity, or actual recognition by the general public, or whether any of the symbols were registered.  See 15 U.S.C. § 1125(c)(2)(A)(i)-(iv).  Instead, it merely alleges that DigitAlb is engaged in the business of providing Internet Protocol Television "to, among others, an Albanian language speaking consumer base in the United States . . . ." (Compl. ¶ 11.)  This allegation suggests at most that the mark may be recognized by Albanian-language consumers—clearly a niche market.[3]  As such, leave to replead would be futile.  See Joint Stock Co., 2017 WL 696126, at *24 (noting the unlikelihood "that plaintiffs, who are all Russian-language broadcasters headquartered in the Russian Federation, could plead facts showing that their marks are famous to the 'general consuming public of the United States'").

   Count VI of the Complaint is dismissed because it does not contain sufficient factual matter to plausibly allege that the mark is even close to being "widely recognized by the general consuming public of the United States."  15 U.S.C. § 1125(c)(2)(A); accord Heller Inc.

---

[3]  DigitAlb contends in its opposition that its content may have up to 200,000 viewers in the United States, that it maintains a website, and that it advertises worldwide, relying on New York City Triathlon, LLC v. NYC Triathlon Club, Inc.  But this amounts to nothing more than a belated effort by DigitAlb to amend its complaint through statements in its briefs.  See Wright, 152 F.3d at 178.  New York City Triathlon is also distinguishable on the facts.  There, the court found that the NYC TRIATHLON mark was famous based on extensive national and international publicity and media coverage, prominent sponsorship, and evidence of national and international recognition and renown.  New York City Triathlon, LLC, 704 F. Supp. 2d 305, 321-22 (S.D.N.Y. 2010).  In any case, the mere fact that DigitAlb has a website and advertises worldwide is insufficient for its marks to be widely recognized by the general consuming public.  E.g., Global Brand Holdings, LLC, 2017 WL 6515419, at *5.

v. Design Within Reach, Inc., 2009 WL 2486054, at *4 (S.D.N.Y. Aug. 14, 2009). The parties' arguments as to the extraterritorial application of the Lanham Act are moot.

III.    Breach of Contract Claim

DigitAlb nestles a breach of contract claim against Setplex among its domestic and foreign copyright infringement claims. Although Setplex does not seek dismissal of that claim, federal courts have an "independent obligation to consider the presence or absence of subject matter jurisdiction sua sponte." In re Tronox Inc., 855 F.3d 84, 95 (2d Cir. 2017) (citing Joseph v. Leavitt, 465 F.3d 87, 89 (2d Cir. 2006)). Because this Court is not convinced it has jurisdiction over this claim, DigitAlb is directed to file affidavits or an amended complaint setting forth in good faith the basis for subject matter jurisdiction.

The breach of contract claim revolves around a licensing agreement that Setplex entered into with Top Channel sh.a, an Albanian corporation that owned the exclusive rights to distribute the contents of Top Channel, Top News, Musical, and Top Channel HD. (Compl. ¶¶ 48, 50.) Under that licensing agreement, Setplex received the right to distribute the content of those channels on a non-exclusive basis in the United States and Canada. (Compl. ¶¶ 48, 51.) During the term of the agreement, Setplex fell into arrears with its license payments to the tune of $75,000, which remained unpaid despite repeated demands by Top Channel sh.a. (Compl. ¶¶ 53-54.) Top Channel sh.a subsequently assigned its claims under the licensing agreement to DigitAlb. (Compl. ¶ 55.)

Because DigitAlb premises subject matter jurisdiction over Count V on § 1332(a)(2) and § 1332(a)(4),[4] (see Compl. ¶ 2), it "bears the burden of demonstrating that the

---

[4]     The amount in controversy exceeds the statutory limit based on DigitAlb's allegations that the payments total $75,000 and that the licensing agreement entitles it to reasonable attorney's fees in collecting the delinquent payments. (Compl. ¶¶ 53, 56.) See Maxons Restorations, Inc. v. Newman, 292 F. Supp. 2d 477, 482 (S.D.N.Y. 2003) (noting that attorney's fees may be included in calculating amount in controversy only if recoverable as of

grounds for diversity exist and that diversity is complete," <u>Advani Enters., Inc. v. Underwriters</u>

<u>at Lloyds</u>, 140 F.3d 157, 160 (2d Cir. 1998). At the outset, § 1332(a)(4) is inapplicable because

DigitAlb is not a foreign state, a political subdivision of a foreign state, or an agency or

instrumentality of a foreign state as defined in 28 U.S.C. § 1603. <u>See</u> 28 U.S.C. § 1332(a)(4).

But even under § 1332(a)(2), DigitAlb's allegations regarding the citizenship of

the Defendants are insufficient to support the exercise of subject matter jurisdiction over the

breach of contract claim. On one hand, DigitAlb alleges that it is an Albanian corporation with

its principal place of business in Albania. (Compl. ¶ 6.) Thus, it is a citizen of Albania. <u>See</u> 28

U.S.C. § 1332(c)(1). On the other hand, the pleadings and record are bereft of averments

demonstrating the citizenship of Defendants. <u>See</u> <u>Leveraged Leasing Admin. Corp. v.</u>

<u>PacifiCorp Capital, Inc.</u>, 87 F.3d 44, 47 (2d Cir. 1996) ("It is firmly established that diversity of

citizenship should be distinctly and positively averred in the pleadings, or should appear with

equal distinctness in other parts of the record." (quotation marks and citation omitted)).

At most, the allegations reveal that the individual Defendants—Lionel Dreshaj

and Benjamin Dreshaj—reside in the Southern District of New York. (Compl. ¶ 5.) But it is

black-letter law that "a statement of the parties' residence is insufficient to establish their

citizenship." <u>Leveraged Leasing Admin. Corp.</u>, 87 F.3d at 47. DigitAlb's allegations as to the

entity Defendants fare no better. Both Setplex LLC and LBD Group LLC are alleged only to be

Delaware limited-liability companies, each with its principal place of business in New York.

(Compl. ¶¶ 7-8.) A limited-liability company's citizenship is the citizenship of each of its

members. <u>WBCMT 2007-C33 NY Living, LLC v. 1145 Clay Ave. Owner, LLC</u>, 964 F. Supp.

2d 265, 267 (S.D.N.Y. 2013); <u>see also</u> <u>Bayerische Landesbank, N.Y. Branch v. Aladdin Capital</u>

---

right pursuant to statute or contract); <u>see also</u> <u>In re Ciprofloxacin Hydrochloride Antitrust Litig.</u>, 166 F. Supp. 2d
740, 755 (E.D.N.Y. 2001).

Mgmt. LLC, 692 F.3d 42, 49 (2d Cir. 2012). However, this Court cannot determine the citizenship of either Setplex LLC or LBD Group LLC because the Complaint does not set forth the citizenship of their members. See Avant Capital Partners, LLC v. W108 Development LLC, --- F. Supp. 3d ---, 2016 WL 3660756, at *2 (S.D.N.Y. 2016) (finding allegations of LLCs' residences, states of formation, and principal places of business to be insufficient). It is possible, for example, that an individual Defendant is a foreign citizen currently residing in New York, or that an entity Defendant is a foreign citizen based on the citizenship of its members. And if any Defendant is a foreign citizen, then this Court may not exercise subject matter jurisdiction under § 1332(a)(2). See F5 Capital v. Pappas, 856 F.3d 61, 75 (2d Cir. 2017) (noting that diversity is "lacking within the meaning of [§ 1332(a)(2)] where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens" (alteration in original and citation omitted)).

Although the allegations in the Complaint do not support the exercise of subject matter jurisdiction over Count V, this Court will afford DigitAlb an opportunity to either file affidavits or an amended complaint setting forth the grounds for subject matter jurisdiction. See 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). As the Second Circuit has explained, a plaintiff's failure to include "adequate allegations to show that the district court has subject matter jurisdiction" is not necessarily fatal because "'the actual existence of diversity jurisdiction, ab initio, does not depend on the complaint's compliance with these procedural requirements.'" Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont, 565 F.3d 56, 64 (2d Cir. 2009) (emphasis in original and citation omitted).

IV.     Foreign Copyright Infringement Claims

        Setplex contends that this Court should dismiss Count IV under the <u>forum non</u>

<u>conveniens</u> doctrine.  In the alternative, Setplex argues that this Court should decline to exercise

supplemental jurisdiction over that claim.  Each argument is addressed in turn.

    A.  <u>Forum Non Conveniens</u>

        <u>Forum non conveniens</u> is "a discretionary device permitting a court in rare

instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over

the claim."  <u>Carey v. Bayerische Hypo-Und Vereinsbank AG</u>, 370 F.3d 234, 237 (2d Cir. 2004).

In resolving a <u>forum non conveniens</u> challenge, a court may "rely on evidence outside the

pleadings, including affidavits."  <u>Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.</u>, 806 F. Supp.

2d 712, 724 (S.D.N.Y. 2011) (citing <u>Alcoa S.S. Co. v. M/V Nordic Regent</u>, 654 F.2d 147, 158

(2d Cir. 1980) (en banc).  In so doing, a court applies the "three-step analysis set forth in <u>Iragorri</u>

<u>v. United Techs. Corp.</u>"  <u>Abdullahi v. Pfizer Inc.</u>, 562 F.3d 163 (2d Cir. 2009).  Under the

<u>Iragorri</u> analysis, the court (1) "determines the degree of deference properly accorded the

plaintiff's choice of forum; (2) "considers whether the alternative forum proposed by the

defendants is adequate to adjudicate the parties' dispute"; and (3) "balances the private and

public interests implicated in the choice of forum."  <u>Norex Petroleum Ltd. v. Access Indus., Inc.</u>,

416 F.3d 146, 153 (2d Cir. 2005).

        As an initial matter, <u>forum non conveniens</u> is most commonly applied in the

context of whether to dismiss an entire <u>action</u>, as opposed to merely dismissing fewer than all of

the claims—as Setplex seeks to do here.  <u>Cf.</u> <u>Atl. Marine Constr. Co. v. U.S. Dist. Court for W.</u>

<u>Dist. of Tex.</u>, 134 S. Ct. 568, 583 (2013) (noting that "a successful motion under <u>forum non</u>

<u>conveniens</u> requires dismissal of the case").  Nonetheless, the Second Circuit has recognized that

because the doctrine "necessarily requires great flexibility," "[d]epending upon the facts of the particular case, a district court may dismiss part of a lawsuit while deciding the merits of other issues." Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC, 81 F.3d 1224, 1234 (2d Cir. 1996); accord Schertenleib v. Traum, 589 F.2d 1156, 1166 (2d Cir. 1978) (affirming dismissal of certain claims on forum non conveniens grounds and others for failure to state a claim).

1. Deference to DigitAlb's Choice of Forum

A plaintiff generally enjoys "a strong presumption in favor of [its] choice of forum," and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Norex Petroleum, 416 F.3d at 154. The degree of deference to give to a plaintiff's choice of forum moves on a sliding scale. Norex Petroleum, 416 F.3d at 154 (explaining that in general, a plaintiff's choice of its home forum is entitled to the greatest deference while a foreign plaintiff's choice of a United States forum receives less deference). In evaluating the appropriate degree of deference, the court compares the lawsuit's bona fide connection to the United States and the forum against any indicia that the plaintiff's choice of forum was motivated by forum-shopping reasons. Norex Petroleum, 416 F.3d at 154.

Factors relevant to whether the forum choice was motivated by genuine convenience include "the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." Iragorri v. United Techs. Corp., 274 F.3d 65, 72 (2d Cir. 2001) (en banc). While a plaintiff's choice of the defendant's home forum "will not, by itself, warrant a presumption of convenience," when it is made to obtain jurisdiction over the defendant, "substantial deference would still be generally appropriate." Pollux Holding Ltd. v. Chase

Manhattan Bank, 329 F.3d 64, 74 (2d Cir. 2003).  In contrast, indicia of forum shopping include

"attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the

habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity

or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant

resulting from litigation in that forum."  Iragorri, 274 F.3d at 72.

Here, Setplex contends only that DigitAlb's choice of forum should be entitled to

less deference because it is a foreign plaintiff.  But such an explanation is too facile.  Instead, this

Court finds that DigitAlb's choice of forum deserves substantial deference because this action

has a bona fide connection to this forum.  See Erausquin, 806 F. Supp. 2d at 724.  There is no

indication that it selected the Southern District of New York to obtain a litigation advantage, or

that either party—an Albanian corporation and a small New York business entity—would be

particularly popular or unpopular in New York.  Moreover, as a New York business entity,

Setplex is undoubtedly amenable to suit in New York, and because the action implicates its

alleged wrongful activities, at least some of the evidence and witnesses will likely be available in

New York.  It is also reasonable to infer that DigitAlb's choice of a New York forum was made

to ensure jurisdiction over Setplex, especially given the opacity in whether Setplex would be

subject to jurisdiction in any of the European countries.

2.  Adequacy of an Alternative Forum

For step two, the defendant must show that a "presently available and adequate

alternative forum exists."  Abdullahi, 562 F.3d at 189; Bank of Credit & Commerce Int'l

(Overseas) Ltd. v. State Bank of Pak., 273 F.3d 241, 248 (2d Cir. 2001) (exhorting district courts

to "keep in mind that it remains the movant's burden to demonstrate the existence of an adequate

alternative forum").  If the defendant fails to satisfy this burden, the forum non conveniens

motion "must be denied regardless of the degree of deference accorded plaintiff's forum choice."

Norex Petroleum, 416 F.3d at 157.  An alternative forum is adequate if the defendant is

amenable to service of process and if it permits litigation of the subject matter of the dispute.

Norex Petroleum, 416 F.3d at 157.  There need not be an identical cause of action or identical

remedies for the alternative forum to be adequate.  Norex Petroleum, 416 F.3d at 158.  However,

such a forum may be inadequate "if it does not permit the reasonably prompt adjudication of a

dispute, or if the forum is not presently available, or if the forum provides a remedy so clearly

unsatisfactory or inadequate that it is tantamount to no remedy at all."  Abdullahi, 562 F.3d at

189 (plaintiff bears the initial burden of producing evidence of corruption, delay, or lack of due

process in the foreign forum).

      Here, Setplex contends that because DigitAlb alleges that Setplex distributed

television programming into various European countries in violation of the statutes of those

countries, each of those countries must be an adequate forum.  DigitAlb counters that Setplex has

not met its burden of showing that those countries could exercise jurisdiction over it.  While

Setplex has identified a plethora of alternative fora, it makes no effort to demonstrate how or

why Defendants would be subject to personal jurisdiction in any of those fora aside from the

assumption that jurisdiction must lie because Defendants allegedly distributed programming into

those countries.[5]  Cf. Shtofmakher v. David, 2015 WL 5148832, at *2 (S.D.N.Y. 2015)

("Conclusory representations of a forum's adequacy are insufficient to meet Defendants'

burden.").  And while an "agreement by the defendant to submit to the jurisdiction of the foreign

---

[5]    In its reply, Setplex offers—by way of example—that a French court may acquire jurisdiction based on a civil code provision allowing a plaintiff to "bring his case, at his choosing, besides the court of the place where the defendant lives, before . . . in tort matters, the court of the place of the event causing liability or the one in whose district the damage was suffered."  See Code de Procédure Civile [C.P.C.] art. 46 (Fr.). But this provision appears to address the question of venue as opposed to whether a defendant is subject to a French court's jurisdiction.  Setplex submits no affidavits from experts in French law—or any other evidence, for that matter—that satisfy its burden.

forum" generally satisfies this requirement, <u>Aguinda v. Texaco, Inc.</u>, 303 F.3d 470, 477 (2d Cir. 2002), Setplex has not indicated whether it would consent to jurisdiction of a foreign court.[6]  Nor has Setplex submitted any affidavits or other evidence that would allow this Court to determine whether any of its proposed fora are adequate.  <u>See</u> <u>Kislin v. Dekker</u>, 2015 WL 410246, at *8 (S.D.N.Y. Jan. 16, 2015) (finding defendant's conclusory statement regarding an alternative forum's adequacy to be insufficient to sustain his burden).  Because it has failed to meet its burden to establish an adequate alternative forum, this Court need not proceed to the private and public interests and denies the motion to dismiss on <u>forum non conveniens</u> grounds.  <u>See</u> <u>PT United Can Co. Ltd. v. Crown Cork & Seal Co.</u>, 138 F.3d 65, 73 (2d Cir. 1998) ("If there is no adequate alternative forum, the inquiry ends, and the motion to dismiss is denied.").

    B.  <u>Supplemental Jurisdiction</u>

In the alternative, Setplex argues that this Court should decline to exercise supplemental jurisdiction over the foreign copyright claims pursuant to 28 U.S.C. § 1367(c)(1) and (2).  Two issues are subsumed within this argument: first, whether this Court has supplemental jurisdiction over the foreign copyright claims pursuant to § 1367(a); and second, whether this Court should, in its discretion, decline to exercise its jurisdiction under § 1367(c).

As to the first issue, § 1367(a) states that this Court "shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" under Article III.  28 U.S.C. § 1367(a).  Claims form part of the same case or controversy if they "derive from a common nucleus of operative fact."  <u>Shahriar v. Smith & Wollensky Rest. Grp., Inc.</u>, 659 F.3d 234, 245

---

[6]    At oral argument, this Court inquired as to whether Defendants would be willing to consent to service of process in any foreign jurisdiction.  (Oral Arg. Tr. at 14:4-5.)

(2d Cir. 2011) (quotation marks omitted).  This standard is met here—the foreign copyright

claims and the U.S. copyright claims derive from the same alleged wrongful acts by Setplex,

with the only difference being the countries to which the television programming was

distributed.  That this Court dismisses the U.S. copyright claims under Rule 12(b)(6) does not

divest it of original jurisdiction over those claims.  Indeed, § 411(a)'s registration requirement,

on which the dismissal of those claims is based, does not implicate subject matter jurisdiction.

See Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 169 (2010).

Because § 1367(a) is satisfied, this Court may decline to exercise supplemental

jurisdiction "only if founded upon an enumerated category of [§] 1367(c)."  Shahriar, 659 F.3d at

245.  In relevant part, district courts may decline to exercise supplemental jurisdiction if "(1) the

claim raises a novel or complex issue of State law, [or] (2) the claim substantially predominates

over the claim or claims over which the district court has original jurisdiction."  28 U.S.C.

§ 1367(c).  Both subsections are examined in turn.

1.  Existence of Novel or Complex Issues

First, Setplex contends that § 1367(c)(1) is satisfied because of the multiplicity of

foreign jurisdictions and the fact that EU copyright law is purportedly in flux.  Specifically,

Setplex points to a 2011 Court of Justice of the EU ("CJEU") case that rejected the "practice of

television channels reserving absolute territorial exclusivity between EU countries" by selling

"broadcasting rights, so as to segment the EU market along national boundaries."

(Memorandum of Law in Support of Defendants Setplex, LLC, Lionel Dreshaj, and Benjamin

Dreshaj's Motion to Dismiss, ECF No. 45 ("Defs.' Memo. of Law"), at 19.)  But even if the

issues decided in the CJEU opinion—which was rendered in 2011—can fairly be described as

novel, it is unclear how the foreign copyright infringement claims would implicate those issues,

which principally relate to the movement of goods and services within the EU market. (Defs.' Memo. of Law, at 19.) Setplex also invokes a 2017 European Parliament draft law regarding "geo-blocking," which is the act of offering an online or digital content service solely within the boundaries of a single EU country. As with the 2011 CJEU opinion, however, Setplex fails to explain how the foreign copyright infringement claims would even implicate the issue addressed by the EU draft law, which relates to "unify[ing] copyright laws of various EU member states to legalize content portability." (Defs.' Memo. of Law, at 19.) In short, aside from examples of how peripheral aspects of EU copyright law may be changing, Setplex does not show how any European copyright principles applicable <u>in this case</u>—namely, those governing copyright infringement—are unsettled or developing.

    2. <u>Whether the Foreign Copyright Claims Substantially Predominate</u>

    Alternatively, Setplex posits that dismissal of the foreign copyright claims would be proper because the need to apply the copyright laws of at least 18 countries would substantially predominate over the claim or claims for which this Court has original jurisdiction. Here, aside from the foreign copyright infringement claims, dismissal of the U.S. copyright infringement claims and the trademark dilution claim leaves only the claim for communications piracy under 47 U.S.C. § 605 and the breach of contract claim (for which subject matter jurisdiction may be lacking).

    Even if the survival of some federal claims "means that not '<u>all</u> claims over which [the district court] has original jurisdiction' have been dismissed," the non-federal claims may be dismissed if "it has nonetheless become clear that the [non-federal] claims now 'substantially predominate[]'" in the litigation. <u>Oneida Indian Nation of N.Y. v. Madison Cty.</u>, 665 F.3d 408, 439 (2d Cir. 2011) (emphasis and alterations in original). Foreign claims may substantially

predominate in terms of proof, scope of issues raised, or comprehensiveness of the remedy sought.  See Giordano v. City of N.Y., 274 F.3d 740, 754 (2d Cir. 2001) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726-27 (1966)).  Courts in this Circuit also consider whether the federal claims "involve a technical or other issue that is peripheral to the state claims" or whether "the factual or legal analyses governing the federal and state claims are unrelated."  See SST Global Tech., LLC v. Chapman, 270 F. Supp. 2d 444, 456-57 (S.D.N.Y. 2003).

        Here, the scope of the legal and factual issues introduced by the foreign copyright claims and the proof that may be required substantially diverge from the breach of contract and communications piracy claims.  The facts underpinning the breach of contract claim center on a licensing agreement authorizing Setplex to distribute television content for four channels in the United States and Canada.  (Compl. ¶ 48.)  Almost by definition, none of these facts are implicated by the foreign copyright claims, which focus on Setplex's unauthorized distribution of a broader scope of content in Europe.  (Compl. ¶ 42.)  Moreover, the breach of contract claim focuses on Setplex's failure to pay fees to a non-party during a period in which it was authorized to distribute certain programming.  By contrast, the foreign copyright claims introduce separate legal issues of whether Setplex's conduct infringed DigitAlb's copyrights under the laws of various European countries.  DigitAlb's communications piracy claim is equally peripheral— factually, because it relates solely to Setplex's purported piracy of programming and distribution of electronic devices to its subscribers within the United States, and legally, because it seeks vindication of DigitAlb's rights under an entirely separate statutory scheme.  (See Compl. ¶¶ 33-34.)  The heart of this action is that Setplex infringed DigitAlb's exclusive rights to distribute certain programming by distributing that programming to its own customers.  Because the foreign copyright infringement claims "constitute[] the real body of [this] case" to which the

breach of contract and communications piracy claims are only appendages, exercising

supplemental jurisdiction is not appropriate.  Oneida Indian Nation of N.Y., 665 F.3d at 439

(citing Gibbs, 383 U.S. at 727).

    Even though § 1367(c)(2) is applicable, a "court should not decline jurisdiction

'unless it also determines that [exercising supplemental jurisdiction] would not promote the

values . . . [of] economy, convenience, fairness, and comity.'"  Oneida Indian Nation of N.Y.,

665 F.3d at 439 (citations omitted) (alterations in original).  Here, dismissal of Count IV would

not amount to a waste of this Court's resources where, as here, this case is still in the pleading

stage and no significant judicial resources have been invested.  See Zohar CDO 2003-1, Ltd. v.

Patriarch Partners, LLC, --- F. Supp. 3d ---, 2017 WL 6628609, at *13 (S.D.N.Y. 2017).  While

discovery is ostensibly underway, it appears far from complete.  (See Reply Memorandum of

Law in Further Support of Defendants Setplex, LLC, Lionel Dreshaj, and Benjamin Dreshaj's

Motion to Dismiss, ECF No. 60, at 3 n.2, 9 (alleging that to date, DigitAlb has produced

broadcasting licenses, but "no documents to support its copyright claims" and "no documents

related to any of the programming at issue").)  And at this juncture, this Court has no familiarity

with the facts or the governing law underlying the foreign copyright claims.  See Chenensky v.

N.Y. Life Ins. Co., 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013).  Moreover, the factually and

legally disparate nature of the foreign copyright claims vis-à-vis the breach of contract and

communications piracy claims suggests that it would not be materially prejudicial for DigitAlb to

re-file its foreign copyright claims in a more appropriate forum.  See Chenensky, 942 F. Supp. 2d

at 394.

    The European nations whose copyright laws Setplex allegedly infringed

undoubtedly possess the greater stake in protecting the property rights and the economic and

cultural interests furthered by those foreign copyright laws.  This consideration is all the more salient where, as here, the only remaining copyright infringement claims arise under foreign law. Cf. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 448 (1964) (White, J., dissenting) (mentioning that "no country has an obligation to further the governmental interests of a foreign sovereign").  Comity dictates that the foreign copyright claims—and the vindication of those interests—are better suited for resolution in a European forum.  Cf. 7 Patry on Copyright § 25:105 (2017) (citing, among others, Murray v. British Broadcasting Corp., 81 F.3d 287 (2d Cir. 1996)) (arguing for forum non conveniens dismissals of cases "involv[ing] only copyright infringement occurring wholly overseas" on the basis that federal courts do not exist to enforce foreign policy or have inherent expertise in that realm).

<u>CONCLUSION</u>

For the foregoing reasons, Setplex's motion to dismiss is granted in part and denied in part. Counts I and II are dismissed with prejudice for failure to state a claim. Count VI is dismissed without prejudice for failure to state a claim. Setplex's motion to dismiss Count IV for <u>forum non conveniens</u> is denied. However, because this Court declines to exercise supplemental jurisdiction over Count IV, the foreign copyright infringement claims are dismissed without prejudice.

Finally, because the Complaint fails to adequately allege Defendants' citizenship, DigitAlb is directed to file affidavits or a Second Amended Complaint setting forth the basis for subject matter jurisdiction over Count V by January 26, 2018. The Clerk of Court is directed to terminate the motion pending at ECF No. 41.

Dated: January 11, 2018
New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.